638 S.E.2d 64

In the Matter of Sumter County Master–In–Equity
Linwood S. EVANS, Jr., Respondent.

No. 26225.

Supreme Court of South Carolina.

Submitted Oct. 17, 2006.

Decided Nov. 20, 2006.

Henry B. Richardson, Jr., Disciplinary Counsel, and Robert E. Bogan, Assistant Deputy Attorney General, both of Columbia, for Office of Disciplinary Counsel.

G. Murrell Smith, Jr., of Lee Erter Wilson James Holler & Smith, LLC, of Sumter, for respondent.

PER CURIAM:

In this judicial disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RJDE, Rule 502, SCACR. In the agreement, respondent admits misconduct and consents to the imposition of any

sanction pursuant to Rule 7(b), RJDE, Rule 502, SCACR. Respondent requests the suspension be made retroactive to the date of his interim suspension.[1] We accept the agreement and impose a one year suspension retroactive to the date of respondent's interim suspension. The facts as set forth in the agreement are as follows.

## FACTS

Respondent was admitted to practice law in South Carolina in 1968. In 1993, he became the part-time Master–in–Equity for Sumter County. In March 2002, respondent sustained a spinal cord injury that permits him to work only from a wheelchair.

In late 2002, respondent hired Shirley Holloman as a secretary at his law firm. In or about December 2002, respondent curtailed his private law practice and relocated his office to the Sumter County Courthouse. At or around the time of the move, Holloman was hired by Sumter County as a full-time secretary or assistant in respondent's Master–in–Equity's office. Holloman's duties included disbursing monies related to cases handled by respondent. While employed full-time as a county employee, Holloman also performed work for respondent's private law practice. Respondent had full faith in Holloman's honesty and integrity.

In 2006, Holloman began to be absent from work in a manner that respondent believed excessive and, on May 12, 2006, respondent terminated Holloman for that reason. On May 13, 2006, while organizing and balancing the financial records of the Master–in–Equity's office, respondent determined that funds were missing from the Master–in–Equity's account.

Holloman confessed to embezzling money from the Master–in–Equity account. According to Holloman, it was customary procedure in the office for respondent to sign "blank" checks so she could later make legitimate disbursements from the Master–in–Equity account. During the 40 month period from February 2003 to May 2006, there were 89 checks drawn on respondent's Master–in–Equity account payable to Holloman totaling $637,445.68 (including more than $300,000.00 payable

---

1. On June 12, 2006, the Court placed respondent on interim suspension.

to Holloman in 2005 alone), though Holloman contends a small number of the checks were legitimate payments or reimbursements.

Analysis of the Master–in–Equity bank records indicates Holloman usually wrote two to four checks to herself every month between October 2003 and May 2006, though in five of those months she only wrote one check and in another month she wrote six. Fifty-eight of the sixty-three checks payable to Holloman after August 13, 2004, were for multiples of $5,000.00. These include thirty-five $5,000.00 checks, twelve $10,000.00 checks, four $15,000.00 checks, three $20,000.00 checks, two $25,000.00 checks, one $40,000.00 check, and one $50,000.00 check. The five checks not written for multiples of $5,000.00 after August 13, 2004, were for $12,460.36, $8,000.00, $400.00, $250.00, and $16.60.

To cover her embezzlement scheme, Holloman made false entries in the check ledger concerning the payee and amount. Respondent represents Holloman also concealed her actions by prohibiting other office staff from opening bank statements, by storing the statement in the top portion of a closet or filing cabinets that were not within reach from his wheelchair, and, on one occasion when he asked to review the statements, by falsely representing that she had taken them home to work on them and forgotten to bring them back. Respondent concedes, however, that except for the one occasion mentioned above, he did not ask Holloman for the bank statements and related records in order to review them, that he made no meaningful review of the cancelled checks and bank statements, and that Holloman's scheme of misappropriation would have been easily discovered by reviewing the financial records for any month during the period of time from October 2003 through May 2006.

Respondent reports he did not knowingly or willfully sign blank checks and has no recollection of having done so, though he could see how it happened that he did. Respondent also represents that his signature was forged on a small number of the aforementioned checks. ODC does not dispute that representation.[2]

---

2. To ODC's best knowledge, respondent reviewed the financial records of his law practice as required by Rule 417, SCACR, and no funds were taken from that account by Holloman.

During its investigation of this matter, ODC learned respondent was charging an assessment or fee of $15.74 on each Master–in–Equity case. Respondent represents this amount was charged to cover the average expenses of handling a matter in the Master–in–Equity court (i.e., copies, postage, long distance calls, and supplies). Respondent accumulated and held these monies in the Master–in–Equity account and directed certain payments from these accumulated monies for Judicial Continuing Legal Education fees, seminar expenses, judicial conferences, employee mileage, and other expenses. Respondent acknowledges that he charged and expended these monies without statutory authority.

## LAW

By his misconduct, respondent admits he has violated the following Canons of the Code of Judicial Conduct: Canon 2 (judge shall avoid impropriety and the appearance of impropriety in all activities); Canon 3 (judge shall perform the duties of judicial office diligently); Canon 3A (judge shall perform all duties prescribed by law); Canon 3(C)(1) (judge shall maintain professional competence in judicial administration); Canon 3(C)(2) (judge shall require staff to observe standards of fidelity and diligence that apply to the judge); and Canon 4(D)(1)(a) (judge shall not engage in financial dealings that may be reasonably perceived to exploit the judge's judicial position), of Rule 501, SCACR. Respondent further admits that his misconduct constitutes grounds for discipline pursuant to Rule 7(a)(1) (it shall be ground for discipline for judge to violate the Code of Judicial Conduct) and Rule 7(a)(4) (it shall be ground for discipline for judge to persistently fail to perform judicial duties or persistently perform judicial duties in an incompetent or neglectful manner) of the Rules for Judicial Disciplinary Enforcement, Rule 502, SCACR.

## CONCLUSION

We find respondent's misconduct warrants a suspension from judicial duties. We therefore accept the Agreement for Discipline by Consent and suspend respondent for one (1)

year, retroactive to the date of his interim suspension. The suspension shall be without pay.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.